# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

GLENFORD TURNER, and
COLLEEN JACKS-TURNER,
    Plaintiffs,

  v.

THE UNITED STATES OF AMERICA,
    Defendant.

No. 3:18-cv-0061 (VAB)

## RULING ON PLAINTIFFS' MOTION FOR LEAVE TO AMEND

Glenford Turner and Colleen Jacks-Turner (the "Turners" or "Plaintiffs") filed this lawsuit against the United States of America ("Defendant"), seeking damages after a United States Department of Veterans Affairs ("VA") surgeon allegedly left a scalpel inside Mr. Turner during surgery. The United States operates the VA's hospital in West Haven, Connecticut, and employed Jaimin Shah, M.D., a "5th year urology trainee" at the time of the surgery, as an "agent or employee or governmental actor of the United States of America." Am. Compl. ¶ 4, ECF No. 8.

The Turners now move for leave to file a Second Amended Complaint and add a *Bivens* claim against Dr. Shah. Pls. Mot. for Leave to Am., ECF No. 12. The Defendant objects.

For the reasons stated below, Plaintiffs' motion for leave to amend is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual Allegations

Mr. Turner, a veteran of the United States Army, served tours of duty in Iraq and Kuwait. Second Am. Compl. ¶ 3. Ms. Jacks-Turner is Mr. Turner's wife. *Id.* ¶¶ 4, 26.

On August 30, 2013, Mr. Turner underwent a "robotic-assisted laparoscopic prostatectomy"[2] at the VA hospital in West Haven, Connecticut. *Id.* ¶ 4. In 2017, nearly four years later, he allegedly experienced dizziness and, as a result, underwent a magnetic resonance imagining ("MRI") scan. *Id.* ¶ 5. During the MRI, he experienced "severe abdominal pain" and subsequent imaging showed that there was a large surgical scalpel in his abdomen. *Id.* Surgeons removed the scalpel a month later. *Id.*

The Turners allege that Dr. Shah left the scalpel in Mr. Turner's stomach during the prostatectomy and "knowingly and intentionally abandoned the large metal scalpel inside of plaintiff's body." *Id.* ¶ 6. The Turners also allege that it is "inconceivable that a physician could unwittingly abandon a scalpel of this size and mass inside a person's body" or, at the very least, Dr. Shaw was deliberately indifferent to Mr. Turner's needs. *Id.* ¶¶ 6-7.

### B. Procedural History

On January 11, 2018, the Turners filed the initial Complaint in this lawsuit. *See generally* Compl., ECF No. 1. The initial Complaint included two claims: a negligence claim against the United States under the Federal Torts Claims Act ("FTCA"), and a loss of consortium claim

---

[1] The factual allegations detailed here are taken from the proposed Second Amended Complaint ("Second Am Compl.") attached as Exhibit 1 to the Plaintiff's Motion for Leave to Amend, ECF No. 12.

[2] Plaintiff argues that this procedure involves a "'keyhole' slit" in the patient's abdomen throughout which the surgeon would be able to operate on the prostate. *See* Pl. Rep. Br. at 2.

asserted by Ms. Jacks-Turner. *Id*. ¶ 12. One day later, the Turners filed an amended complaint asserting the same two claims. *See generally* Am. Compl.

On March 16, 2016, the Turners sought leave to amend the Complaint a second time. *See generally* Pl. Mot. to Am. ("Pl. Mot."), ECF No. 12. The Second Amended Complaint adds a *Bivens* claim against Dr. Shah in his individual capacity. Second Am. Compl. at 4-7. The Turners argue that leave is appropriate "for complete relief and judicial economy." Pls. Mot. at 1. They argue that the claim against Dr. Shah is appropriate under a "'state created danger'/failure to protect theory" and that Dr. Shah violated Mr. Turner's substantive due process rights under the Fifth Amendment. *Id.* at 2.

The United States argues that this Court lacks jurisdiction over the *Bivens* claim, *see generally* Def. Obj., ECF No. 13; Def. Mem. in Support ("Def. Mem."), ECF 13-1, and that an immunity statute channels all claims arising from VA medical care through the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq*. Def, Mem. at 4-9. This statute, Defendant maintains, provides a remedy, and that it would be inappropriate for the Court to create a *Bivens* remedy in this context, *id.* at 16 ("As stated above, Congress has provided a comprehensive statute that expressly states that the FTCA is the exclusive remedy for claims against VA personnel arising from medical treatment"), and thus there is no need to grant leave to add a futile claim.

## II. STANDARD OF REVIEW

Rule 15 of the Federal Rules of Civil Procedure provides that parties may either amend once as a matter of course or, once the time period has elapsed, move for leave to file an amended complaint. Fed. R. Civ. P. 15(a). Parties who fail to file an amended complaint within the time period, or who seek additional amendments once the time period has elapsed, may seek

the consent of the opposing party or the court's leave to amend. Fed. R. Civ. P. 15(a)(2). The "court should freely give leave when justice so requires." *Id*.

Under Fed. R. Civ. P. 15, the decision to grant leave to amend is within the discretion of the court, but the court must give some "justifying reason" for denying leave. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Id*.; *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." (internal citations omitted)); *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) ("While mere delay, absent a showing of bad faith or undue prejudice, is not enough for a district court to deny leave to amend, the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." (internal quotation marks omitted)).

### III. DISCUSSION

The issue is whether a *Bivens* action may be maintained against a VA doctor where, in the course of medical treatment, the doctor allegedly violated the patient's constitutional rights. Plaintiffs argue that adding this claim only involves seeking *Bivens* remedies previously recognized, and that these remedies are necessary to provide the Turners complete relief. *See* Pl. Rep. Br. at 1, ECF No. 14. Defendant argues that to recognize a *Bivens* remedy here would be unprecedented because such remedies are generally disfavored and inappropriate in cases such as this, given that Congress has prescribed an alternative procedure for these types of claims. The Court agrees.

4

First, recognizing a *Bivens* remedy in this case would require an expansion of the remedy and "the [Supreme] Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, Congress has enacted an immunity statute that requires all torts to be directed through the provisions of the FTCA, thus providing an "alternative, existing process that amounts to a convincing reason to refrain from creating a new *Bivens* remedy." *Ingram v. Faruque*, 728 F.3d 1239, 1244 (10th Cir. 2013).

Without a recourse to *Bivens*, this Court lacks jurisdiction over a federal government actor sued for money damages in his or her individual capacity. *Ingram*, 728 F.3d at 1249. The Second Amended Complaint thus would be unable to survive a motion to dismiss, and the amendment therefore is futile. *Lucente,* 310 F.3d at 258 (holding amendment may be futile if the amended complaint "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)").

### A. *Bivens'* History and New Contexts

The Court must first address whether the Turners' claim alleges a *Bivens* claim that has already been established, or whether it would require an expansion of the remedy into a new context. *Ziglar*, 137 S. Ct. at 1864; *Sanford v. Bruno*, No. 17-CV-5132 (BMC), 2018 WL 2198759, at *5 (E.D.N.Y. May 14, 2018) (noting the two step test and that "[f]irst, the court must determine whether a plaintiff's claims arise in a new *Bivens* context.").

In *Bivens*, the Supreme Court recognized an implied private cause of action for individuals harmed by federal officers. *See generally Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); *see also Corr. Servs. Corp. v. Malesko*, 534

U.S. 61, 66 (2001) (noting in *Bivens* "we recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.").

The *Bivens* case involved a search and seizure by the then-Federal Bureau of Narcotics, and the Supreme Court held a plaintiff could pursue "a cause of action for damages" implied directly from the Fourth Amendment. *Bivens*, 403 U.S. at 388. Immediately following *Bivens*, the Supreme Court expanded the remedy to two new contexts: claims challenging sex discrimination under the Fifth Amendment's Due Process Clause, *Davis v. Passman*, 442 U.S. 228, 244 (1979), and claims arising from the Eighth Amendment's Cruel and Unusual Punishments Clause. *Carlson v. Green*, 446 U.S. 14 (1980).

After *Carlson*, however, the Supreme Court "has consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Malesko,* 534 U.S. at 68 (declining to recognize *Bivens* remedy for Eighth Amendment violations against private prison operator under color of federal law); *see also Bush v. Lucas*, 462 U.S. 367, 368 (1983) (declining to "authorize a new nonstatutory damages remedy for federal employees whose First Amendment rights are violated by their superiors."); *United States v. Stanley*, 483 U.S. 669, 684 (1987) ("We hold that no *Bivens* remedy is available for injuries that arise out of or are in the course of activity incident to service" for service members pursuing substantive due process claim against military officers); *Schweiker v. Chilicky*, 487 U.S. 412 (1988) (declining to recognize an implied cause of action for due process violations allegedly committed by government officials administering Social Security disability benefits); *Minneci v. Pollard*, 565 U.S. 118, 131 (2012) (declining to recognize implied cause of action under the Eighth Amendment against "privately employed personnel working at a privately operated federal prison").

Most recently, in *Ziglar v. Abbasi*, the Supreme Court further delineated how courts should address an individual claim and whether, for the purposes of *Bivens*, it offered an expansion of the remedy or an application of a prior-recognized claim. *See Ziglar*, 137 S. Ct. at 1859–60 (declining to recognize *Bivens* claims "challenging the conditions of confinement imposed on respondents pursuant to the formal policy adopted by the Executive Officials in the wake of the September 11 attacks."). The Supreme Court held that:

> The proper test for determining whether a case presents a new *Bivens* context is as follows. If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860. In applying that test, the Supreme Court focused on the factual context of the claim, noting that the specific claims "bear little resemblance to the three *Bivens* claims" previously recognized. *Id.*[3] The claims therefore were in a new *Bivens* context and "special factors" counseled against recognizing a cause of action in that context. *Id.*

The Turners argue that their claim would not require this Court to recognize a new *Bivens* claim. *See* Pls. Rep. Br. at 1. They characterize their claim as either a "Fifth Amendment

---

[3] These three claims were described in a fact-bound manner, as a "claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma." *Id. See also Sanford v. Bruno*, No. 17-CV-5132 (BMC), 2018 WL 2198759, at *4 (E.D.N.Y. May 14, 2018) ("*Ziglar* also made it clear that the *only* recognized implied rights of action are the narrow situations presented in *Bivens*, *Davis*, and *Carlson*.").

7

substantive due process claim" that the Supreme Court "previously recognized" in *Davis v. Passman* or as an Eighth Amendment claim recognized in *Carlson v. Green* because "the plaintiff was unconscious and within the full custody and control of the defendant." *Id.* While these arguments are understandable, given both the harm alleged here and the limitations on any recovery in the absence of a *Bivens* claim, they nevertheless fail.

Significantly, the Turners claim a constitutional injury that is unprecedented: a combination of Fifth Amendment substantive due process claim and an Eighth Amendment deliberate indifference claim. They cite no caselaw supporting their underlying claim.

But even assuming they had articulated such a right, it would differ in significant ways from the claims in *Davis* and *Carlson*. *Davis* recognized a sex discrimination claim — "a claim against a Congressman for firing his female secretary," *Ziglar*, 137 S. Ct. at 1860 — and did not entail misconduct by a physician or the type of substantive due process allegation at issue here. And *Carlson* involved a prison, not a VA hospital. Plaintiffs point to no similar case under *Bivens*, nor one involving suits against the VA, nor even one against any medical personnel outside the prison context.[4]

Recognizing a *Bivens* claim in this case therefore would require the Court to "extend *Bivens* liability to [a] new context or new category of defendants." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). And, because "the recognition of a cause of action is context-specific," this

---

[4] At oral argument, counsel for the Turners suggested that, notwithstanding the absence of the circumstances required for a viable Eighth Amendment claim, like governmental custody in a prison or a similar context, the Eighth Amendment should apply nonetheless. In the absence of any binding caselaw in support of this position, however, the Court cannot adopt this position. *Cf. Jenkins v. New York City Dep't of Homeless Servs.*, 643 F. Supp. 2d 507, 511–12 (S.D.N.Y. 2009), *aff'd on other grounds*, 391 F. App'x 81 (2d Cir. 2010) ("However, because Jenkins was not being punished for a crime or civil offense, he has no recourse under the Eighth Amendment."). In any event, as discussed above, the Supreme Court's recent decision in *Ziglar* foreclosed the approach advocated by the Turners. *See Ziglar*, 137 S. Ct. at 1859–60.

Court must turn to the second step of the inquiry: whether it should recognize a "new and freestanding remedy in damages" within this new context. *Sanford*, 2018 WL 2198759, at *5.

### B. The VA Immunity Statute and Alternative Forms of Judicial Relief

The Supreme Court has "made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1857. The Court may weigh several different factors in deciding whether to expand the remedy. It would be inappropriate, for example, to recognize a *Bivens* remedy in a new context where "special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* A second consideration is whether "other alternative forms of judicial relief" are available. *Id.* at 1863 (quoting *Minneci v. Pollard*, 565 U.S. 118, 124 (2012)).

The United States argues that the second consideration bars recognition of a *Bivens* remedy in this case. *See* Def. Mem. at 14-16. It cites the VA immunity statute, 38 U.S.C. § 7316, which channels medical malpractice claims and intentional torts through FTCA procedures, as providing an alternative form of judicial relief that would bar access to a *Bivens* action. *Id.* at 16 ("Alone or in combination, the availability of these alternative processes would preclude Plaintiffs' proposed *Bivens* action, thereby making their motion to amend futile.").

Plaintiffs disagree. They argue that "Congress is precluded from passing laws that eliminate Constitutional rights" and that therefore "[t]he VA immunity statute can't supplant a constitutional right." Pls. Rep. Br. at 3 (citing *Marbury v. Madison*, 5 U.S. 137 (1803)). Additionally, they argue that the "FTCA does not provide an exclusive remedial process" and that a career Army combat veteran should be provided at least the same opportunity as an allegedly harmed detained prisoner to test his allegations at trial." Pl. Mot. at 2-3. Finally, they argue that the FTCA cannot provide effective relief because the FTCA precludes claims arising

9

from intentional torts. Pls. Mot. at 3 ("Additionally, the FTCA specifically excludes claims based on battery from its purview."). The Court disagrees.

First, Plaintiffs conflate the issue of the availability of a damages action for a constitutional rights violation with the issue of immunity (in this case, sovereign immunity). As the Supreme Court held in *Stanley*, 483 U.S. 669 (1987), "the availability of a damages action under the Constitution for particular *injuries* (those incurred in the course of military service) is a question logically distinct from immunity to such an action on the part of particular *defendants*." 483 U.S. at 684. Indeed, "[w]hen liability is asserted under a statute, for example, no one would suggest that whether a cause of action exists should be determined by consulting the scope of common-law immunity enjoyed by actors in the area to which the statute pertains. Rather, one applies that immunity (unless the statute says otherwise) to whatever actions and remedies the terms of the statute are found to provide." *Id.* Thus, "the *Bivens* inquiry . . . is analytically distinct from the question of official immunity from *Bivens* liability." *Id.*

In other words, under the doctrine of sovereign immunity, the Supreme Court has permitted Congress to limit the scope of relief for the violation of constitutional rights, while not extinguishing the constitutional rights themselves. *See id.*; *see also Carlson*, 446 U.S. at 20 ("This conclusion is buttressed by the significant fact that Congress follows the practice of explicitly stating when it means to make FTCA an exclusive remedy."). Significantly, as the dissent in *Stanley* points out, the circumstances under which the Supreme Court denied relief are at least as compelling as those alleged here:

> In experiments designed to test the effects of lysergic acid diethylamide (LSD), the Government of the United States treated thousands of its citizens as though they were laboratory animals, dosing them with this dangerous drug without their consent. One of the victims, James B. Stanley, seeks compensation from the Government officials who injured him. The Court holds that the

10

> Constitution provides him with no remedy, solely because his injuries were inflicted while he performed his duties in the Nation's Armed Forces.

483 U.S. at 686 (Brennan, J. dissenting).

Second, unlike in *Stanley*, Congress has provided a remedy under 38 U.S.C. § 7316(a) "for damages for personal injury, including death, allegedly arising from malpractice or negligence of a health care employee of the Administration in furnishing health care or treatment while in the exercise of that employee's duties in or for the Administration." This remedy, however, is "exclusive" and must be made through the FTCA, *See* 38 U.S.C. § 7316(a)(1)(A); *see also Ingram*, 728 F.3d at 1245 ("The VA Immunity Statute applies the remedy available against the United States under the FTCA to damages arising from the provision of medical services by health care employees of the VA.").

This waiver of sovereign immunity authorizes the substitution of the United States for the individual federal employees "[w]hen federal employees are sued for damages for harms caused in the course of their employment," *Hui v. Castaneda*, 559 U.S. 799, 801 (2010), and allows the United States to be "liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674.

Moreover, while the FTCA does not normally apply to intentional torts, *see* 28 U.S.C. § 2680(h), the VA Immunity Statute states that this exception "shall not apply to any claim arising out of a negligent or wrongful act or omission of any person described in subsection (a) in furnishing medical care or treatment (including medical care or treatment furnished in the course of a clinical study or investigation) while in the exercise of such person's duties in or for the Administration." 38 U.S.C. § 7316(f); *see also Berndston v. United States*, No. 3:15-CV-1879 (AWT), 2017 WL 830390, at *5 n.1 (D. Conn. Mar. 1, 2017) ("Although 28 U.S.C. § 2680(h)

specifically excludes claims for intentional torts, including battery, from the sovereign immunity waiver effected by the FTCA, '§ 2680(h) does not bar application of the FTCA to tort claims arising out of the conduct of VA medical personnel within the scope of' what is now designated as 38 U.S.C. § 7316." (quoting *Franklin v. United States*, 992 F.2d 1492, 1499-1502 (10th Cir. 1993)).

While there is no Second Circuit or Supreme Court caselaw addressing the relationship between the VA immunity statute and *Bivens*, other courts have consistently and uniformly held that this statute bars recourse to a *Bivens* claim. *See, e.g., Ingram*, 728 F.3d at 1246 ("We conclude that the Statute provides an exclusive remedy that precludes the creation of a remedy under *Bivens*."); *Brown v. Mercadante*, 687 F. App'x 220, 222–23 (3d Cir. 2017) (affirming dismissal of *Bivens* claims against individual defendants because "Brown's exclusive remedy was a claim against the Government under the FTCA"); *Hall v. AFSCME*, No. CV 17-3417, 2017 WL 4274877, at *3 (E.D. Pa. Sept. 26, 2017) ("Plaintiff's exclusive remedy for any negligence or intentional torts committed by VA employees in the course of treating him at VA facilities is a claim against the United States under the [FTCA.] In other words, a *Bivens* action does not exist to remedy the type of conduct described in plaintiff's complaint."); *Maki v. United States*, No. CIV.A. 7:07CV00443, 2008 WL 746653, at *3 (W.D. Va. Mar. 19, 2008) (dismissing individual defendant and *Bivens* claim because "plaintiff's allegations against Miller fall comfortably within the provisions of § 7316, which make plaintiff's remedies against the United States exclusive.").

The Court finds these authorities sufficiently persuasive, and Plaintiffs cite to no case upholding a patient's ability to maintain a *Bivens* action against VA medical personnel for claims arising within the scope of the immunity statute.

Plaintiffs correctly note that the existence of the FTCA alone would not preclude access to a *Bivens* remedy, Pls. Mot. at 2-3 (citing *Malesko*, 534 U.S. at 68), relying primarily on the Supreme Court's holding in *Carlson*, which recognized *Bivens* and FTCA claims "as parallel, complementary causes of action." 446 U.S. at 20.

In *Carlson*, however, the Court noted there was "no explicit congressional declaration that persons injured by federal officers' violations of the Eighth Amendment may not recover money damages . . . ." *Id.* at 19. The Court held that the FTCA would not provide a remedy absent such a congressional declaration, but it recognized that "[t]his conclusion is buttressed by the significant fact that Congress follows the practice of explicitly stating when it means to make FTCA an exclusive remedy." *Id.* at 20 (citing previous VA immunity statute as example of congressional action rendering FTCA an exclusive remedy).

*Carlson* therefore is distinguishable. Here, Congress chose to channel claims against VA medical personnel, for medical malpractice and including intentional torts, by enacting a separate statute that then invoked the procedures of the FTCA.

Notably, the Supreme Court addressed a statutory scheme similar to the VA immunity statute in *Hui v. Castaneda*. Mr. Castaneda had been detained by United States Immigration and Customs Enforcement ('ICE") and had arrived at the detention center with an "irregular, raised lesion" on his penis. 559 U.S. at 802. Dr. Esther Hui, a civilian doctor employed by the ICE's health service, examined him. *Id.* Despite increasingly serious complications, repeated requests for treatment, and recommendations from outside specialists and facility staff, Dr. Hui and others denied requests to biopsy the lesion. *Id.* at 803. Later diagnosed with cancer, Mr. Castenada died as a result. *Id.* Mr. Castenada and, following his death, his sister and daughter, brought both an FTCA claim and a *Bivens* claim. *Id.*

13

The Supreme Court held that the relevant statute there, 42 U.S.C. § 233, barred the *Bivens* claim because that law channeled claims for "personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions . . . by any commissioned officer or employee of the Public Health Service while acting within the scope of his office" exclusively through the FTCA. *Id.* at 805 (quoting 42 U.S.C. § 233(a)). In *Hui*, the statute thus "plainly preclude[d] a *Bivens* action against petitioners for the harms alleged in this case" by making the FTCA the exclusive remedy and providing immunity to individual officers. *Id.* at 813.

After the Supreme Court's decision in *Hui*, the VA Immunity Statute has been interpreted as similarly providing exclusive relief through the FTCA. *Accord. Ingram,* 728 F.3d at 1246 (citing *Hui* to note that the "Supreme Court has determined that language similar to that contained in § 7316(a)(1) creates an exclusive cause of action that precludes a Bivens remedy."). Plaintiff fails to cite to any caselaw requiring a different result.

The allegations in this case thus fall within the scope of the immunity statute. The Turners allege that Mr. Turner "underwent a robotic-assisted laparoscopic prostatectomy at VA Connecticut Healthcare System, West Haven Campus." Second Am. Compl. ¶ 4. They allege that Dr. Shah was "a 5th year urology trainee and agent or employee or governmental actor of the United States of America." *Id.* at 5. The offending conduct clearly "aris[es] from malpractice or negligence," or other "wrongful act or omission," committed by "a health care employee of the Administration in furnishing health care or treatment while in the exercise of that employee's duties in or for the Administration." 38 U.S.C. § 7316(a), (f). These claims are within the scope of the VA Immunity Statute and the exclusive remedy therefore is under the FTCA with the United States as defendant.

As a result, the claims alleged against Dr. Shah would not survive a motion to dismiss. Amendment of the complaint to add a *Bivens* claim would be futile, and therefore the motion for leave to amend is denied. *Lucente*, 310 F.3d at 258 (noting leave to amend may be denied when an amendment is "futile" and "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)" (internal citations omitted)).

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' motion for leave to amend, ECF No. 12, is **DENIED.**

SO ORDERED at Bridgeport, Connecticut, this 2nd day of July, 2018.

           /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge